# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF PENNSYLVANIA


TOLL PROCESSING          )
SERVICES, LLC            )
                                   )
            Plaintiff,        )
                                   )
                                   )     Civil Action No. 2:12-00928
                                   )     ECF No. 6
KASTALON, INC.; KASTALON    )
POLYURETHANE PRODUCTS;     )
and KASTALON, INC. t/d/b/a      )
KASTALON POLYURETHANE      )
PRODUCTS                   )
                                   )
            Defendants.     )

## MEMORANDUM OPINION


I.      CONCLUSION

For the reasons set forth below, the Defendant's Motion to Transfer Venue (ECF No. 6) under 28 U.S.C. § 1404(a) to the Northern District of Illinois is granted.


II.     BACKGROUND

In this diversity case, Plaintiff, Toll Processing Services, LLC, a Delaware company with its principal place of business in Pittsburgh, Pennsylvania ("Plaintiff), filed suit alleging conversion and negligence against Defendants, Illinois corporations with their principal places of business in Alsip, Illinois, collectively doing business as Kastalon Polyurethane Products (hereinafter referred to in the singular as "Defendant"). Plaintiff seeks damages arising out of

the storage and eventual disposal of certain polyurethane-coated rolls used in steel processing.

In late 2006 Plaintiff purchased a used "pickle line," which included polyurethane-coated steel rolls (the "rolls"), from Joseph T. Ryerson & Sons in Chicago, Illinois ("Ryerson"). The rolls are components of the pickle line. Plaintiff allegedly planned to have the rolls reconditioned so that it could reinstall and operate the pickle line at a new location.

In February and March of 2008 Plaintiff had the rolls shipped from Chicago to Defendant's facility in Alsip, a distance of about 7.6 miles, with the apparent understanding that Defendant would store and, when requested by Plaintiff, recondition the rolls. Although no written agreement has been proffered,[1] the Defendants allegedly agreed to store the rolls free of charge until a purchase order to recondition the rolls was issued.

About seven months later in October 2008, E. Gus Schempp, of the Plaintiff, spoke with Michael DeMent, an officer and co-owner of the Defendant, to confirm that Defendant would not charge a fee for storage of the rolls and that a date for reconditioning of the rolls and the issuance of a purchase order was still to be determined. From that date Defendant stored the rolls while Plaintiff's project to re-install the rolls at another location was allegedly in development.

Without any notice to or discussion with Plaintiff, Defendant greased and wrapped the rolls and moved them outdoors for storage, where they rusted. In late 2010, roughly two years after the communication between Mr. Schempp and Mr. DeMent and without any notice to Plaintiff, Defendant sold the rolls for scrap to Smith Salvage Company.

In June of 2011, a little over three years after first shipping the rolls to Defendant's facility, Mr. Schempp contacted Defendant to request a quote for the reconditioning of the rolls

---

[1] Likewise no evidence of a forum selection clause has been proffered.

because Plaintiff had located a buyer for the pickle line.   It was at this time that Defendant informed Mr. Schempp that the rolls were no longer in their possession and had been sold for scrap.

Plaintiff commenced this action in the Court of Common Pleas of Allegheny County, Pennsylvania, by filing a complaint on June 8, 2012.   Defendant removed the action to the Western District of Pennsylvania by filing a Notice of Removal on July 7, 2012.   Defendant now comes before this court on seeking to transfer venue to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).

III.    <u>ANALYSIS</u>

**A.  <u>Overview</u>**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."   The Court observes that subject matter and personal jurisdiction would be proper in either the transferor or the transferee district.   <u>See</u> 28 U.S.C. § 1404(a).

In reviewing a motion to transfer from a proper venue pursuant to 28 U.S.C. § 1404(a), the factors examined by the Court include convenience to the parties and witnesses, and the interests of justice.   <u>See</u> <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988).   The party seeking the transfer has the burden of establishing the justice of transfer.   <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995).

In deciding motions to transfer venue, "courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or

interests of justice)."   Jumara, 55 F.3d at 879.   In addition, courts consider relevant public and private interests.

The private factors considered by the Third Circuit include the parties' preferences; whether the claim arose elsewhere; the convenience of the parties; the unavailability of witnesses for trial; and the situs of books and records.   Id. (citing 15 Wright, Miller & Cooper § 3848-3853).[2]   See also American Littoral Soc. v. U.S. E.P.A., 943 F. Supp. 548, 550 (E.D.Pa. 1996).   Applicable public factors include the enforceability of the judgment; factors that could make the trial easier, more expeditious, or less expensive; relative administrative difficulties pertaining to court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with applicable state law in diversity cases.   Jumara, 55 F.3d at 879 (citing Wright, Miller & Cooper § 3854).

## B.   Private Factors

A plaintiff's choice of forum is given significant weight as reflecting either a home forum or dispute-resolution preference.   See   Am. Littoral Soc., 943 F. Supp. at 551; Jumara, *supra.* Generally a plaintiff's choice of forum is the principal consideration when deciding a request for transfer and that choice should not be lightly disturbed.   Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied 401 U.S. 910 (1971).   Plaintiff has chosen this forum because its business is located within the Western District of Pennsylvania.   Defendant does not dispute that venue is proper in this jurisdiction.

_____

[2]   Cf. Wright, Miller & Cooper § 3847 (providing general list of factors courts consider, including: plaintiff's choice of forum, where the claim arose, convenience of the parties, convenience and availability of witnesses, location of documents/sources of proof, local interest in deciding local controversies at home, and trial efficiencies/expense).

Notwithstanding the deference given to Plaintiff's forum choice, courts give substantially less weight to a plaintiff's forum choice when the dispute at the heart of the lawsuit occurred almost entirely in another state.   Santi v. Nat'l Business Records Management, 722 F. Supp. 2d 602, 607 (D.N.J. 2010), Bartolacci v. Church of Jesus Christ of Latter-Day Saints, 476 F. Supp. 381, 383 (E.D. Pa. 1979), Hamilton v. Nochimson, 2009 WL 2195138, at *3 (E.D. Pa. 2009).[3]

With the exception of telephone calls placed from this District, all of the transactions in this case occurred in the Northern District of Illinois.   The rolls were bought, shipped, stored, and disposed of in the Northern District of Illinois.   Kastalon is headquartered in Illinois. Ryerson is located in Illinois.   Smith Salvage company, the company which bought the rolls for scrap, is located in Illinois.

Because substantially all of the operative facts in this case occurred in the Northern District of Illinois, the courts finds this factor weighs heavily in favor of transfer.[4]

Books or records affiliated with this case, such as those related to Defendant's receipt,

---

[3]Plaintiff cites Labrot v. John Elway Chrysler Jeep on Broadway, 436 F. Supp. 2d 729, 731 (E.D. Pa. 2006) for the proposition that plaintiff's choice of forum is still paramount even when the relevant facts occurred in another forum.   The equities in Labrot track differently from those in the present case because the corporate Plaintiff in this case actively sought out business in the distant forum and affirmatively initiated the business relationship with the Defendant in this distant forum.   In Labrot, the individual plaintiff was a passive victim of a malfunctioning electric car window in a distant forum and did not actively seek a relationship with defendant in the distant forum.

[4]   The Court finds Plaintiff's analysis of legal inquiry to be misguided vis a vis the factor of "where the claim arose" as required under Jumara.   Plaintiff contends the effects of the events were felt in this District and that venue is irrelevant to the legal inquiry in this case of whether Defendant knew or should have known that Plaintiff owned the rolls, whether Defendant disposed of the rolls without the knowledge and permission of Plaintiff, and whether Defendant had any justifiable defense for converting the rolls.   The Court finds that the element of "whether the claim arose elsewhere" is limited to the operative facts of where the alleged tort occurred. The legal inquiry analysis of Defendant's knowledge and intent is not relevant here but can be expected to be relevant to establish a prima facie case in trial.

conditions of storage, and ultimate disposal of the rolls, are more likely to be in the Northern

District of Illinois.   Plaintiff does not point to any significant books or records related to this

case that are located in this District.   Thus, although technological advances of recent years have

reduced the weight of this factor, <u>Am. Env. Services, Inc. v. Metalworking Lubricants Co.</u>, 634

F. Supp 2d 568 (W.D. Pa. 2009), because the majority of records regarding this dispute spanning

nearly five years are more likely to be located where the alleged tort occurred, the Court finds

this factor weighs in favor of transfer.

 In considering the "convenience of the parties," courts look to the relative physical and

financial condition of the parties.   <u>See</u> <u>Jumara</u>, 55 F.3d at 879.   Neither party in this case is

meaningfully inconvenienced over the other.   Both parties would have to travel to depose the

opposing party's witnesses and would be equally inconvenienced by having to prepare for trial in

a distant forum.   Both the Plaintiff and the Defendant are businesses and are presumably equally

able to bear the expense of a short trial in another state.   This factor is neutral.

 Relevant witness testimony about the storage and sale of the rolls is likely to be proffered

by current or former employees of Defendant, all of whom are located in Illinois.   While

representatives from Plaintiff who reside in this jurisdiction will also likely testify, more

witnesses can be expected to reside in the Northern District of Illinois given the fact that all of

the operative facts occurred there.   Two of Plaintiff's proposed non-party witnesses are likely

within the subpoena power of the Northern District of Illinois and not within the subpoena power

of this Court.   This factor weighs in favor of transfer.

### C. <u>Public Factors</u>

 Defendant's argument that any judgment against it would have to be enforced in Illinois

weighs in favor of transfer.   Since Defendant's assets are located in the Northern District of

Illinois, less would be required of the Illinois courts to execute a judgment against Defendant than would be required of courts in Pennsylvania.

The existence of a formalized alternative dispute resolution system in the Western District of Pennsylvania weighs slightly in favor of denying transfer as it could prove more expeditious and less expensive if the case was settled in mediation. Having said that, there is nothing to preclude the parties from engaging in mediation and, even in jurisdictions where ADR is not mandatory, many judges encourage settlement discussions and/or mediation.

Plaintiff presents statistics demonstrating that court congestion is greater in the Northern District of Illinois than in the Western District of Pennsylvania. Conversely Defendant contends that the resolution time of cases is Illinois is shorter (i.e. 6.6 months in Illinois versus 7 months in Pennsylvania for the time from filing to disposition of civil matters in 2011). While the Illinois courts appear to handle more cases, their docket is not backlogged. Therefore this factor is neutral.

While both fora have an interest in deciding this controversy–Defendant argues that Illinois has a strong interest in developing a body of law relating to issues of abandoned commercial property while Plaintiff contends that Pennsylvania has an interest of protecting resident corporations from injury–Illinois has a greater interest since the alleged tort occurred within its jurisdiction. This factor weighs in favor of transfer.

Other than an interest in developing a body of law to protect its resident corporations, which would exist in both fora, the Court does not see a public policy interest that merits this case being heard in one venue over the other. This factor is neutral.

Because the alleged tort in this case occurred in the Northern District of Illinois, there is a strong argument that Illinois law will apply. This factor also favors transfer.

**IV.** **CONCLUSION**

For the above reasons, Defendant has met its burden by showing that the interests of justice weigh in favor of transfer to the Northern District of Illinois, which is on balance the more proper and convenient forum for this tort action. The operative facts occurred and the cause of action arose in the Northern District of Illinois, the relative ease of access to sources of proof, related litigation costs and efficiencies favor transfer. See Koster v. American Lumbermen's Mutual Casualty Co., 330 U.S. 518 (1947)("The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.").

Defendant has met its burden to establish the justice of transferring this action to the Northern District of Illinois under 28 U.S.C. § 1404(a). A separate order granting the motion will be entered.

_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge


Dated: December 17, 2012